IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RICHARD E. MINTON,                      )
                                        )
                 Plaintiff,             )
                                        )   CIVIL ACTION
v.                                      )
                                        )   No. 07-4146-JAR-JTR
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                 Defendant.             )
_____)


REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(I), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(I), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  Finding error in the Commissioner's decision, and finding that further fact-finding is necessary to a determination of disability, the court recommends the Commissioner's decision be reversed and the case be remanded for further proceedings consistent with this opinion.

I.   Background

On Apr. 23, 2002, plaintiff applied for DIB and SSI, alleging disability beginning Apr. 3, 2002.  (R. 19, 138-41, 385-

87).  His applications were denied initially and upon
reconsideration, and he requested an ALJ hearing.  (R. 19, 27-30,
61-62, 388-89).  Plaintiff's request was granted, a hearing was
held, and an unfavorable decision issued on Nov. 25, 2003 (the
first decision).  (R. 19, 91-101, 398-422).  At plaintiff's
request, the Appeals Council reviewed the first decision, found
error, vacated the decision, and remanded for further proceedings
in an order dated July 9, 2004.  (R. 19, 110-13).

On remand, a hearing at which plaintiff appeared and was
represented by counsel was held on July 13, 2006, but the case
had been reassigned to a new ALJ who was not aware the case was a
remand from the Appeals Council and who was unprepared to
proceed.  (R. 423-26).  Thus, the hearing was continued, and was
subsequently held on Apr. 12, 2007.  (R. 427-73).  At the
hearing, plaintiff was represented by counsel, and testimony was
taken from plaintiff and from a vocational expert.  (R. 19, 427-
28).  Thereafter, the ALJ issued a decision (the second decision)
finding plaintiff not disabled, and denying his applications.
(R. 19-26).  In the second decision, the ALJ found that plaintiff
has no physical impairments but has a "severe" combination of
mental impairments consisting of depression, personality
disorder, alcohol dependence, largely in remission, and marijuana
dependence, probably in remission.  (R. 20).  She found that the
severity of plaintiff's mental impairments does not meet or

-2-

medically equal the severity of Listing 12.04, because plaintiff's condition does not meet the paragraph "B" criteria of the listing.  (R. 20).

The ALJ considered the evidence of record, including the medical opinions and plaintiff's testimony, determined that plaintiff's allegations of symptoms are not fully credible, and gave little weight to the opinion of plaintiff's treating psychiatrist, Dr. Policard.  (R. 21-24).  She assessed plaintiff with no physical limitations, but found mental limitations making him unable to work with the public, able only minimally to occasionally to have contact with co-workers and supervisors, but "able to perform more than simple tasks."  (R. 25).  Based upon this residual functional capacity (RFC) assessment, and relying upon the testimony of the vocational expert, the ALJ found, alternatively, that plaintiff is able to perform his past relevant work, and is also able to perform other work existing in significant numbers in the economy.  (R. 25).  Consequently, she determined plaintiff is not disabled within the meaning of the Act, and denied his applications.  (R. 25, 26).

Plaintiff disagreed with the second decision, and once again sought Appeals Council review.  (R. 14-15).  The Appeals Council found no reason to review the decision, and denied plaintiff's request.  (R. 10-12).  Therefore, the second ALJ's decision is the final decision of the Commissioner.  (R. 10); <u>Blea v.</u>

Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now

seeks judicial review of the second decision.

**II.  Legal Standard**

    The court's review is guided by the Act.  42 U.S.C.

§§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of

the Commissioner as to any fact, if supported by substantial

evidence, shall be conclusive."  The court must determine whether

the factual findings are supported by substantial evidence in the

record and whether the ALJ applied the correct legal standard.

Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v.

Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial

evidence is more than a scintilla, but less than a preponderance,

it is such evidence as a reasonable mind might accept to support

a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th

Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [it's]

judgment for that of the agency."  White, 287 F.3d at 905

(quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799,

800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172

(10th Cir. 2005).  The determination of whether substantial

evidence supports the Commissioner's decision, however, is not

simply a quantitative exercise, for evidence is not substantial

if it is overwhelmed by other evidence or if it constitutes mere

conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d

222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual

can establish that he has a physical or mental impairment which

prevents him from engaging in substantial gainful activity and is

expected to result in death or to last for a continuous period of

at least twelve months.  42 U.S.C. § 423(d).  The claimant's

impairments must be of such severity that he is not only unable

to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other

substantial gainful work existing in the national economy.  <u>Id.</u>

The Commissioner uses a five-step sequential process to

evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520,

416.920 (2007); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir.

2004); <u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at

any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  <u>Williams</u>

<u>v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines

whether claimant has engaged in substantial gainful activity

since the alleged onset, whether he has severe impairments, and

whether the severity of his impairments meets or equals the

severity of any impairment in the Listing of Impairments (20

C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Id.</u> at 750-51.  If

plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in three respects:  (1) that she erred in evaluating the opinions of plaintiff's treating psychiatrist, Dr. Policard, (2) that she erred in assessing plaintiff's mental RFC, and (3) that she erred in finding plaintiff's condition does not meet the criteria of Listing 12.04.  In his final argument, plaintiff claims that, "The administrative record has been fully developed, and further fact-finding is unnecessary," and that the court should remand the case for an immediate award of benefits.  (Pl. Br. 33).  The Commissioner argues, "the ALJ properly considered Dr. Policard's

opinion and gave it little weight" (Comm'r Br. 17), the ALJ properly found that plaintiff's impairments do not meet the criteria of Listing 12.04, and she properly assessed plaintiff's RFC. (Comm'r Br. 21-22). The court will address each issue in the order it would be reached in applying the sequential evaluation process. Because consideration of Dr. Policard's opinion is necessary to a proper evaluation whether plaintiff's condition meets or equals the criteria of Listing 12.04, the court begins with the ALJ's evaluation of Dr. Policard's opinion.

**III. Evaluation of the Treating Psychiatrist's Opinions**

   **A.   Standard for Evaluating Treating Source Opinions**

     The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" <u>Id.</u> at 1300 (quoting Soc. Sec. Ruling (SSR) 96-2p). If the opinion is well-supported, the ALJ must then determine whether the opinion is consistent with other substantial evidence in the record. <u>Id.</u> (citing SSR 96-2p). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." <u>Id.</u>

     If the treating source opinion is not given controlling weight, the inquiry does not end. <u>Id.</u> A treating source opinion

is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." <u>Id.</u> Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[1]  <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  <u>Id.</u> 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific,

---

[1]The regulations provide two examples of such "other factors."  Those examples are, "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, . . . and the extent to which an acceptable medical source is familiar with the other information in your case record."  20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).  In the second decision, the ALJ numbered these examples as regulatory factors (7), and (6), respectively.  (R. 24).

legitimate reasons' for doing so." Id. (citing Miller v.
Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen,
816 F.2d 508, 513 (10th Cir. 1987)).

**B.   The Decisions and the Record**

In the first decision, that ALJ summarized Dr. Policard's
Medical Source Statement, dated Oct. 7, 2002:

> Dr. Policard indicated that the claimant has a poor
> ability to maintain regular attendance and be punctual
> within customary tolerances; sustain an ordinary
> routine without special supervision; make simple work-
> related decisions; complete a normal workday and
> workweek without interruptions from psychologically
> based symptoms, and perform at a consistent pace
> without an unreasonable number and length of rest
> periods; and respond appropriately to changes in the
> work setting.

(R. 97)(citing Ex. 8F (R. 306-13)).

In that decision, the ALJ interpreted Dr. Policard's opinion
to the effect that "alcohol addiction will likely impede
claimant's ability to engage in sustained employment," and found
that plaintiff's condition meets the severity of Listing 12.09
when plaintiff continues to use alcohol. (R. 98)(citing Ex. 8F).
Ultimately, when the first ALJ found that plaintiff would not be
disabled if he stopped using alcohol, he acknowledged Dr.
Policard's opinion that plaintiff is disabled, but discounted the
opinion, stating "this report is internally inconsistent and does
not contain a reduction for drug and alcohol abuse.  Therefore,
Dr. Policard's opinions have not been given substantial weight."
(R. 99).

In reviewing the first decision, the Appeals Council specifically found error with this analysis of Dr. Policard's opinion.  It noted that the first decision did not explain how the opinion was "internally inconsistent," did not explain what is meant by the statement that the opinion did not "contain a reduction for drug and alcohol abuse," and did not discuss whether the opinion is consistent with the record as a whole. (R. 110).  The Appeals Council ordered remand for the ALJ, among other things, to further consider Dr. Policard's opinion, explain the weight given the opinion, and to "request Dr. Policard to provide clarification of whether the claimant's limitations are attributed to substance abuse."  (R. 111)(citations omitted).

After remand, additional medical evidence was received from Dr. Policard and the Mental Health Center of East Central Kansas. (R. 327-83)(Exs. 10F - 16F).  Apparently the first ALJ requested clarification from Dr. Policard, because the record includes a letter from Dr. Policard addressed to the first ALJ in which the doctor stated, "I am hereby clarifying that my clinical opinion concerning Mr. Minton was based on his mental impairments rather than on his substance abuse history."  (R. 343).  The record also includes two additional sets of medical opinions from Dr. Policard, provided after remand.  (R. 344-54)(Ex. 13F); (R. 364-74)(Ex. 15F).  Exhibit 13F includes a "Depression and Anxiety - Medical Source Statement" signed by a nurse practitioner and by

Dr. Policard and dated Mar. 26, 2007 (R. 345-50), along with a
"Medical Source Statement - Drug and/or Alcohol Abuse" signed by
the same individuals and dated May 23, 2007.  (R. 351-54).
Exhibit 15F consists of a "Medical Source Statement - Drug and/or
Alcohol Abuse" and a "Depression and Anxiety - Medical Source
Statement" each signed only by Dr. Policard and dated,
respectively, July 6, and July 12, 2006.  (R. 364-73).

In the second decision, the second ALJ recognized that "the
case was remanded by the Appeals Council, in part, because the
prior decision did not state how the opinion of Dr. Policard,
claimant's treating psychiatrist, was internally inconsistent and
did not discuss whether Dr. Policard's opinion was consistent
with the record as a whole."  (R. 21).  Immediately thereafter,
the ALJ summarized Dr. Policard's treatment records, which
summary is quoted here in its entirety:

> The undersigned has carefully reviewed the medical
> evidence and finds claimant has only taken a single
> antidepressant the entire time at issue, Remeron, an
> antidepressant, which he takes at night.  Further,
> although the dosage has been adjusted up and down, it has
> never been changed.  The undersigned finds this is an
> indication that, in the opinion of Dr. Policard who
> prescribes claimant's medication, the medication is
> effective.  Treatment notes show claimant has had some
> difficulties being compliant with Remeron, but when
> compliant the treatment notes indicate he functions well.
> For example, on June 12, 2002, Dr. Policard noted
> claimant stated he felt "much better" since starting back
> on Remeron (Ex F33).  On January 21, 2003, Dr. Policard
> stated claimant was doing fine, reported no depressive
> symptoms, and believed he had benefited [sic] from
> Remeron (Ex F85).  On January 31, 2003, the medication
> was noted to be helping his symptoms, but claimant showed
> little or no motivation to do something positive with his

-11-

life.  His GAF score at that time was 70, reflecting mild
psychological symptoms or limitations (Ex F92).  On March
9, 2004, claimant had stopped taking medication due to
the cost but his depression had not exacerbated (Ex F93).
On August 4, 2004, claimant was still not taking
medication and doing well "when I don't have to deal with
my father" (Ex F98).  On January 11, 2005 claimant was
noted to have started back on medication and reported
feeling "less depressed again" (Ex F100).  The
undersigned notes claimant stopped taking Remeron from
approximately March 2004 through December 2004 during
which time he functioned fairly well.  For example, on
August 4, 2004, claimant was described as coherent,
logical, and fairly stable.  He had no hallucinations, no
delusions, and was not homicidal or suicidal (Ex F98).
The undersigned finds this is also an indication that his
mental illness is not that bad.  Further, at that exam,
claimant admitted to occasional "light" drinking which is
contrary to his testimony as to when he last consumed
alcohol.

The undersigned also notes that most of claimant's mental
status evaluations reported him as being somewhat
depressed, and often describe him as logical, pleasant,
coherent, and without complaints, particularly when not
abusing alcohol or marijuana.  For example, on June 12,
2002 he was calm and stable; on July 12, 2002, appears
stable, improved; on September 20, 2002 when living in
his car, was calm, fairly coherent, denied hallucinations
and depression; on March 21, 2002, had no hallucinations
or delusions, was not homicidal or suicidal, and was not
a risk to self or others; on January 11, 2005, was
pleasant, alert, oriented, and talkative but had a
somewhat blunted affect.  He was reported to have
improved and his mental status was within normal limits;
on May 17, 2005, he was pleasant, alert, oriented, and
friendly but his affect was blunted; on June 13, 2006 his
mood was stable, his mental status evaluation was within
normal limits, and claimant stated his depression was
"mild;["] and on January 12, 2007, claimant's condition
was reported as "stable" and again, his mental status
evaluation was within normal limits.

(R. 22).  Then, after discussing plaintiff's testimony at some

length in the second decision, the ALJ returned to evaluation of

Dr. Policard's opinion:

>The Administrative Law Judge has reviewed the residual
>functional capacity statements signed by Annette Milius
>and Dr. Policard on March 26, 2007 and May 23, 2007 and
>gives them little weight because <u>they clearly conflict</u>
><u>with Dr. Policard's own treatment notes</u>.  The undersigned
>finds treatment notes are the most reliable indicator of
>a person's mental health because they are records made
>contemporaneously with claimant's presentation at the
>time and not long afterward.

(R. 24)(emphasis added).  Later in the decision, the ALJ cited

the regulatory factors discussed above at pp. 8-9, and

immediately thereafter concluded:  "Medical opinions are

discussed above and the treatment notes are given great weight."

(R. 24-25).  From this, the court concludes that the ALJ gave

little weight to Dr. Policard's opinions but great weight to Dr.

Policard's treatment notes--which the ALJ found to be in clear

conflict with the opinions.

### C.   Arguments

Plaintiff makes numerous claims of error in evaluating the

treating psychiatrist's opinions.  He claims the ALJ erred:

(1) in ignoring the 2002 and 2006 opinions of Dr. Policard (Pl.

Br. 19); (2) in failing to take into account any of the

regulatory factors for evaluating medical opinions (Pl. Br. 21),

(3) in selectively abstracting only evidence supporting her

decision (Pl. Br. 24); and (4) in failing to recontact Dr.

Policard to clarify the apparent conflicts between his opinions

and his treatment notes.  (Pl. Br. 26).  He also claims (5) that

the ALJ's stated reason for discounting Dr. Policard's 2007

opinions is "entirely insufficient" (Pl. Br. 19), and (6) that
the ALJ simply applied her own medical judgment and decided that
plaintiff's mental impairments are not as limiting as Dr.
Policard suggested.  (Pl. Br. 22).

    The Commissioner argues that the ALJ properly evaluated Dr.
Policard's opinion and gave it little weight.  (Comm'r Br. 17).
Specifically, he points to the decision and argues that the "ALJ
discussed Plaintiff's medical records in detail and demonstrated
that they were inconsistent with the extreme limitations
expressed in Dr. Policard's assessment."  (Comm'r Br. 17)(citing
(R. 22-25)).  Later, he notes that the ALJ cited several mental
status examinations which Dr. Policard found within normal
limits, and argues, "it does not take a medical expert to know
that a 'normal' mental examination is inconsistent with the
extreme limitations expressed by Dr. Policard."  (Comm'r Br. 18-
19).  Although the Commissioner appears to admit that the ALJ did
not discuss Dr. Policard's 2002 and 2006 opinions, he argues that
Dr. Policard's opinions were all inconsistent, and that this is
another fact tending to support the ALJ's finding.  (Comm'r Br.
19).  He argues that Dr. Policard's opinions are also
inconsistent with the report of plaintiff's former employer, and
finally, that the ALJ had no duty to recontact Dr. Policard
because a duty to recontact arises only where the evidence
received from the physician is inadequate to make a decision

regarding disability, not where the physician's opinions are merely inconsistent with the physician's treatment notes.

**D.    Analysis**

The court finds numerous errors in the evaluation of the treating psychiatrist's opinion.  First, as plaintiff argues, the ALJ did not even acknowledge the 2002 and 2006 opinions of Dr. Policard.  Thus, apart from the ALJ's recognition that the first decision was remanded because the first ALJ did not properly evaluate the 2002 opinion, the court cannot tell whether the ALJ was even aware that these opinions exist.  A medical opinion may not be ignored, and because the ALJ did so, remand is necessary. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  The Commissioner's argument that all three opinions (2002, 2006, 2007)(Exs. 8F, 15F, 13F) are inconsistent is not helpful to his position.  A decision may be affirmed only on a basis relied upon in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).

Second, as plaintiff also argues, the reason for discounting the psychiatrist's opinion is inadequate to discount a treating source opinion.  The ALJ stated she gave Dr. Policard's opinions little weight "because they clearly conflict with Dr. Policard's treatment notes." (R. 24).  Yet, the ALJ did not point to a single part of Dr. Policard's opinions which is in conflict with the treatment notes.  This also, is an error requiring remand.

The court finds that this error is made more egregious because it is quite similar to an error committed in the first decision, and the second ALJ specifically noted that error.  She stated the case had been remanded because the first decision "did not state how the opinion of Dr. Policard . . . was internally inconsistent." (R. 21).  Although the second ALJ did not find Dr. Policard's opinions internally inconsistent, she found that they clearly conflict with his treatment notes.  Yet, she did not state <u>how</u> the opinions conflict with the notes.

The Commissioner's argument highlights the problem.  He cites <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1217 (10th Cir. 2004) for the proposition that if an ALJ finds a treating physician's opinion inconsistent with the record, the ALJ "must specifically highlight those portions of the record with which the physician's opinion was allegedly inconsistent." (Comm'r Br. 17).  He then argues that "the ALJ specifically identified several inconsistencies between the treatment notes and Dr. Policard's

assessment."  Id.  He points to the ALJ's statements:  that
plaintiff reported doing fine and denied depressive symptoms on
occasion; that plaintiff's medication helped his symptoms; that
treatment notes on occasion described plaintiff as stable without
hallucinations, delusions, or suicidal thoughts; that on one
occasion plaintiff was assigned a GAF[2] score of 70; and that on
occasion plaintiff's mental status was reported within normal
limits.  This argument is unavailing because the Commissioner's
brief merely implies that the facts stated in the treatment notes
are inconsistent with Dr. Policard's opinions.  Neither the
decision nor the Commissioner's brief shows how the opinions are
inconsistent with or conflict with the treatment notes.

In 2004, this court was faced with a similar situation,
where the ALJ merely stated the medical evidence, stated the
physician's opinion, and stated his conclusion with regard to the

---

[2]Global Assessment of Functioning.  A GAF score is a
subjective determination which represents "the clinician's
judgment of the individual's overall level of functioning."  Am.
Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
Disorders (DSM-IV) 30 (4th ed. 1994).  The GAF Scale ranges from
100 (superior functioning) to 1 (persistent danger of severely
hurting self or others, persistent inability to maintain minimal
personal hygiene, or serious suicidal act with clear expectation
of death).  Id. at 32.  GAF is a classification system providing
objective evidence of a degree of mental impairment.  Birnell v.
Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt
v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).  GAF
scores in the range 61-70 indicate **"Some mild symptoms . . . OR
some difficulty in social, occupational, or school functioning
. . . but generally functioning pretty well, has some meaningful
interpersonal relationships**."  DSM-IV, at 32.

opinion.  <u>Kency v. Barnhart</u>, No. 03-1190-MLB, Report and
Recommendation at 12 (D. Kan. Aug. 25, 2004).  This court noted,
"Mere juxtaposition of the evidence and the conclusion does not
permit the court to determine whether the ALJ applied the correct
legal standard or whether substantial evidence in the record
supports the conclusion reached."  <u>Id.</u> slip op at 13.  In
adopting this court's Report and Recommendation, the district
court made note that "the ALJ simply listed all the evidence
contained in the record and then set forth his conclusion without
explaining the inconsistencies and ambiguities contained in the
opinions.  He did not connect the dots, so to speak, as is
required by S.S.R. 96-8p."  <u>Id.</u> slip op at 7 (D. Kan. Nov. 16,
2004)(adopting report and recommendation).  The decision in this
case, however, does not even reach the level of analysis
presented in <u>Kency</u> because here the ALJ did not acknowledge that
Dr. Policard provided three sets of opinions, and did not even
summarize the opinion she recognized.  Therefore, were the court
to attempt to determine whether substantial evidence supports
finding that the treatment notes are inconsistent with the
opinions, it would be required in the first instance to weigh the
opinions and make a finding as to what Dr. Policard's opinions
are.  This the court may not do.

        Third, the court finds that the ALJ selectively abstracted
evidence supportive of her decision and ignored contrary

evidence.   As plaintiff argues, such a procedure is error.   <u>Owen</u>
<u>v. Chater</u>, 913 F. Supp. 1413, 1420 (D. Kan. 1995).   This court
has repeatedly noted that it is error for the ALJ to ignore the
evidence as a whole while choosing instead to abstract pieces of
evidence favorable to her decision.   <u>O'Connor v. Shalala</u>, 873 F.
Supp. 1482, 1491 (D. Kan. 1995); <u>Jones v. Sullivan</u>, 804 F. Supp.
1398, 1406 (D. Kan. 1992); <u>Claassen v. Heckler</u>, 600 F. Supp.
1507, 1511 (D. Kan. 1985).   Here, the ALJ committed error in
abstracting evidence supportive of her position and ignoring
contrary evidence.

As quoted above at pp. 11-12, the ALJ summarized Dr.
Policard's treatment notes.   (R. 22).   The only indication in the
decision that Dr. Policard's records contain evidence contrary to
the ALJ's determination is the ALJ's statements that, "Treatment
notes show claimant has had some difficulties being compliant
with Remeron," and "that most of claimant's mental status
evaluations reported him as being somewhat depressed, and often
describe him as logical, pleasant, coherent, and without
complaints." (R. 22).   However, these statements only <u>imply</u> that
there may be contrary evidence in the treatment notes, without
expressing the contrary evidence.   The ALJ did not present or
summarize the contrary evidence.

The court's review of the <u>treatment notes cited by the ALJ</u>
reveals the following information which tends to be contrary to

-19-

the ALJ's findings.  Jun. 12, 2002; plaintiff felt "overly sedated," "sleeping approx. 12 hrs. and feeling 'tired' during the day" (R. 264); Jul. 29, 2002, "cl. seems to be withdrawing from services" (R. 324); Aug. 4, 2004, "significantly impaired functioning" (R. 328).

Plaintiff noted that the ALJ cited a GAF score of 70 on Jan. 31, 2003, and argued that the ALJ ignored other reported GAF scores which were lower.  Plaintiff's argument is correct, the record contains the following GAF scores not reported by the ALJ: 60,[3] Nov. 04, 2002, (R. 335); 45,[4] Apr. 24, 2003; 43, Jul. 24, 2003 (R. 333); 45, May 3, 2004, (R. 331); 48, Aug. 2, 2004.  (R. 329).  The Commissioner argues that the ALJ need not have considered the GAF scores cited by plaintiff because they "were not assigned by Dr. Policard."  However, all of the GAF scores at issue are included in the treatment records of the "Mental Health Center of East Central Kansas," which are Dr. Policard's treatment records.  Moreover, even the Jan. 31, 2003 treatment note and GAF score relied upon by the ALJ contains no signature and no internal confirmation that it was completed by Dr. Policard.  Absent sufficient explanation, it is error for the ALJ

---

[3]GAF scores in the range of 51-60 indicate **"Moderate symptoms . . . OR any moderate difficulty in social, occupational, or school functioning."**  DSM-IV, at 32.

[4]GAF scores in the range of 41-50 indicate **"Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning**."  DSM-IV, at 32.

to rely upon a relatively benign GAF score while ignoring other scores indicating a more severe condition.

In addition to contrary indications in treatment notes cited by the ALJ, the court's review found other treatment notes not mentioned by the ALJ showing a condition more severe than indicated in the ALJ's discussion:  Apr. 19, 2002, condition worse (R. 272); May 6, 2002, "treatment needed to reduce harm risk to self" (R. 270);  Jul. 15, 2002, "trouble tracking thoughts, seems depressed with psychotic symptoms" (R. 325); May 12, 2004, significantly impaired functioning (R. 330); Mar. 8, 2005, significantly impaired functioning (R. 341); Jul. 28, 2005, "blunted affect," significantly impaired functioning (R. 339); Oct. 4, 2005, worse (R. 338); Dec. 5, 2005, "moderately depressed," significantly impaired functioning (R. 337); Jan. 16, 2006, "at baseline," significantly impaired functioning (R. 336). By citing evidence such as treatment notes and GAF scores not mentioned in the second decision, the court does not intend to imply that it has weighed the evidence and found that plaintiff's condition is worse than found by the ALJ.  Weighing the evidence is not the function of the reviewing court.  Rather, the court merely points out that the ALJ failed to consider all of the evidence.  On remand, it may be that the Commissioner will find that plaintiff is not disabled.  However, to do so, he must properly consider and weigh Dr. Policard's opinions.  He may not,

as the ALJ has done here, ignore evidence which is contrary to his findings.

Fourth, the decision reveals that the ALJ applied her own medical judgment to reject Dr. Policard's opinions.  As plaintiff argues, an ALJ may not substitute her medical judgment for that of a physician.  <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1022 (10th Cir. 1996)(citing <u>Kemp v. Bowen</u>, 816 F.2d 1469, 1476 (10th Cir. 1987)).

The ALJ made findings which lead to the conclusion that she substituted her own medical judgment for that of Dr. Policard. She found the fact that Dr. Policard has never prescribed a medication other than Remeron is an indication <u>that Dr. Policard believes</u> the medication is effective.  However, Dr. Policard did not state that the medication is effective.

A lay person such as the ALJ or this court might properly infer from these facts that Dr. Policard sees no reason in the circumstances to change the medication, and that the medication is having at least a partial desired effect.  However, the question of effectiveness requires medical expertise which neither the ALJ nor this court possess.  There is no evidence in the record that any medical expert has opined that a failure to try a different medication indicates that the medication being used is effective.  Nor does the ALJ cite to medical authority for that conclusion.  She did not take the testimony of a medical

expert to support her findings.  Perhaps Remeron is providing partial help in this case and there is no other medication which might produce improvement.  Perhaps other medication are contraindicated by some factor in this case.  Without medical expertise or citation to medical authority, the ALJ and this court cannot make those determinations.  Yet the ALJ has purported to do so.

The ALJ cited treatment notes indicating that on certain days plaintiff presented no indication of hallucinations or delusions, and was not homicidal or suicidal.  She found that these facts are an indication that plaintiff's "mental illness is not that bad."  (R. 22).  Again, even assuming that the severity of "not that bad" can be determined, the conclusion reached by the ALJ is a medical conclusion for which there is no citation to the record or to other medical authority.  This is a conclusion for which the ALJ does not have medical expertise, yet she has reached the conclusion without citation to medical authority. The court can come to no other conclusion than that the ALJ substituted her own medical judgment for that of Dr. Policard in this case.  This is error requiring remand.

The court finds little merit in plaintiff's remaining arguments regarding the psychiatrist's opinion.  Plaintiff argues that the ALJ did not "take into account any of the regulatory factors in determining what weight should be given to [Dr.

Policard's] opinion." (Pl. Br. 21). However, the decision affirmatively reveals that the ALJ considered the effectiveness of plaintiff's medication, the relationship between plaintiff and Dr. Policard, the supportability and consistency of Dr. Policard's opinions, and Dr. Policard's specialization as a psychiatrist. As discussed above, the ALJ stated the regulatory factors which are to be considered in weighing medical opinions. Moreover, the court does not insist on a factor-by-factor analysis of the regulatory factors so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007)(quoting Watkins, 350 F.3d at 1300). Here, the ALJ failed to properly explain the reason for the weight given Dr. Policard's opinions, but the court perceives no error in whether the ALJ considered the regulatory factors.

Finally, plaintiff claims the ALJ erred in failing to recontact Dr. Policard for clarification of the alleged conflicts between his medical opinions and his treatment notes. (Pl. Br. 26-27). The Commissioner argues a duty to recontact a physician arises only when the evidence received from the physician is inadequate for consideration. (Comm'r Br. 20-21). The law is more nuanced than plaintiff or the Commissioner allows.

The regulations provide that a medical source will be
recontacted "When the evidence we receive from your treating
physician or psychologist or other medical source is inadequate
for us to determine whether you are disabled." 20 C.F.R.
§§ 404.1512(e), 416.912(e).  The Tenth Circuit has found a duty
to recontact the physician where a treating source did not
provide <u>any</u> reason for his opinion, <u>Robinson v. Barnhart</u>, 366
F.3d 1078, 1084 (10th Cir. 2004); where the <u>validity</u> of the
treating source's opinion is open to question, <u>McGoffin v.
Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir. 2002); and where the ALJ
ignored the treating sources' opinions that claimant was disabled
but <u>stated</u> that the sources' had not given any functional
restrictions for the claimant, <u>Roberts v. Barnhart</u>, 36 Fed. Appx.
416, 419 (10th Cir. June 12, 2002).  The decision whether to
recontact is triggered not merely by an inconsistency, an
ambiguity, or a conflict, but by such a problem which renders the
evidence inadequate for the ALJ to determine whether a claimant
is disabled.  Where the evidence is adequate for the ALJ to
resolve ambiguities, inconsistencies, and conflicts and properly
reach a disability determination, there is no duty to recontact.
The Tenth Circuit has explained:  "it is not the rejection of the
treating physician's opinion that triggers the duty to recontact
the physician; rather it is the inadequacy of the 'evidence' the
ALJ 'receive[s] from [the claimant's] treating physician' that

-25-

triggers the duty." <u>White</u>, 287 F.3d at 908(quoting 20 C.F.R.
416.912(e)).  Here, the Commissioner has not properly considered
all of the evidence of record.  Therefore, it would be premature
to determine whether he must recontact the treating psychiatrist.

## IV.  Evaluation of Mental Impairments

Plaintiff claims that the ALJ erred both in assessing
plaintiff's mental RFC and in finding that plaintiff's condition
does not meet the criteria for mental Listing 12.04.
Specifically, he argues that the ALJ assessed plaintiff with
mental limitations but gave no explanation for her conclusions
and did not "relate them to the evidence in any way." (Pl. Br.
28).  He argues that the ALJ made findings regarding plaintiff's
mental limitations in the four broad functional areas (identified
in the Commissioner's psychiatric review technique and used in
the "paragraph B" and "paragraph C" criteria of the mental
disorder listings), but that she did not offer any rationale or
explanation for her findings despite the Appeals Council's order
that she do so. (Pl. Br. 28).  With regard to Listing 12.04,
plaintiff argues that the ALJ found that plaintiff's condition
does not meet the "paragraph B" criteria of the listing but gave
"no explanation of the evidentiary basis for her" conclusions
regarding plaintiff's limitations in the four broad functional
areas; and that Dr. Policard stated limitations in the four broad
functional areas which, if accepted, would establish that

-26-

plaintiff's condition meets the "paragraph B" criteria of Listing 12.04. (Pl. Br. 30). The court construes these arguments as an assertion that the ALJ did not properly apply the psychiatric review technique (PRT), and consequently did not properly evaluate Listing 12.04 or assess plaintiff's mental RFC. The Commissioner argues that the ALJ properly assessed plaintiff's limitations in the four broad functional areas, properly found plaintiff's condition does not meet Listing 12.04, and properly assessed plaintiff's mental RFC. (Comm'r Br. 21-22). The court finds error in applying the PRT and in assessing mental RFC.

### A.   Standard for Evaluating Mental Impairments

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. In evaluating the severity of mental impairments at steps two and three, the technique provides for rating the degree of functional limitation in each of four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. §§ 404.1520a(c) 416.920a(c). After rating the degree of limitation in each functional area, the Commissioner determines the severity of plaintiff's mental impairments. Id. §§ 404.1520a(d), 416.920a(d).

When the first three functional areas are rated as "none" or "mild," and the fourth area is rated as "none," the agency will

conclude at step two of the sequential evaluation process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities." Id. §§ 404.1520a(d)(1), 416.920a(d)(1).  If claimant's mental impairments are severe, the technique requires an evaluation of whether the impairment meets or equals a listed impairment by comparing the step two findings and the medical evidence with the criteria of the listings.  Id. §§ 404.1520a(d)(2), 416.920a(d)(2).  If the Commissioner determines that plaintiff's mental impairments do not meet or equal a listing, she will then assess plaintiff's RFC.  Id. §§ 404.1520a(d)(3), 416.920a(d)(3).

In determining RFC, the regulations provide that the Commissioner will consider plaintiff's "ability to meet the physical, mental, sensory, and other requirements of work."  Id. §§ 404.1545(a)(4), 416.945(a)(4).  The regulations provide that "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [plaintiff's] ability to do [work.]"  Id. §§ 404.1545(c), 416.945(c).

The Commissioner has clarified the difference between evaluating the severity of mental limitations at steps two and

three based upon the broad functional areas identified in the psychiatric review technique and evaluating the ability to meet mental demands of jobs at steps four and five.  SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2008).  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four functional areas.  Id.  RFC must be expressed in terms of work-related function.  Id. at 148.  "Work-related mental activities generally required by competitive, remunerative work include the abilities to:  understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."  Id. at 149.  Therefore, an ALJ should not state a mental RFC in terms of the four functional areas, but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand.

SSR 96-8p also includes narrative discussion requirements for an RFC assessment.  Id. at 149.  The discussion is to cite specific medical facts to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id.  The

discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.   Id.

**B.   Analysis**

Here, the ALJ made findings regarding plaintiff's limitations in the four broad functional areas ("no limitation in activities of daily living, more than moderate but less than marked difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence, or pace, and no periods of decompensation of extended duration" (R. 20)), and made findings regarding plaintiff's mental RFC ("unable to work with the public; can only minimally to occasionally, i.e. up to one-third of a work day, have contact with co-workers and supervisors; and is able to perform more than simple tasks" (R. 25)).

However, the ALJ merely made conclusory findings with regard to these issues and, as plaintiff argues, did not provide a narrative discussion explaining the findings or showing how the findings are supported by record evidence.  She did not cite specific medical facts to describe how the evidence supports each conclusion.  She did not explain how any ambiguities and material inconsistencies in the evidence were considered and resolved. Thus, the only way the court might determine whether substantial evidence in the record as a whole supports these findings would

-30-

be to evaluate all of the evidence, determine what evidence is relevant to application of the psychiatric review technique, weigh that evidence itself, and determine whether the evidence supports the findings made by the ALJ.  This procedure would turn the court's review into essentially a <u>de novo</u> review, but the court's review is circumscribed by statute.  Therefore, remand is necessary for the Commissioner to properly apply the psychiatric review technique, and then to determine whether plaintiff's condition meets Listing 12.04, and, if necessary, to assess plaintiff's mental RFC in accordance with the regulations and the Social Security Rulings as discussed herein.

**V.    Remand for an Immediate Award of Benefits**

In his final argument, plaintiff claims that the case should be remanded for an immediate award of benefits because the decision reveals numerous errors, because the Commissioner failed to properly adjudicate the case in six years, and because the administrative record has been fully developed and further fact-finding is unnecessary.  The Commissioner argues that substantial evidence supports the ALJ's decision, but that remand for further development and a new decision is appropriate if the court determines the decision is not correct.

Whether to remand the case for additional fact-finding or for an immediate award of benefits is within the discretion of the court.  <u>Ragland v. Shalala</u>, 992 F.2d 1056, 1060 (10th Cir.

1993); <u>Taylor v. Callahan</u>, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing <u>Dixon v. Heckler</u>, 811 F.2d 506, 511 (10th Cir. 1987)).

In 2006, the Tenth Circuit noted two factors relevant to whether to remand for an immediate award of benefits:  Length of time the matter has been pending and "whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits." <u>Salazar v. Barnhart</u>, 468 F.3d 615, 626 (10th Cir. 2006)(quoting <u>Harris v. Sec'y of Health & Human Servs.</u>, 821 F.2d 541, 545 (10th Cir. 1997); and citing <u>Sisco v. Dep't of Health & Human Servs.</u>, 10 F.3d 739, 746 (10th Cir. 1993)).  The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. <u>Gilliland v. Heckler</u>, 786 F.2d 178, 184, 185 (3rd Cir. 1986). However, the Commissioner is not entitled to adjudicate a case <u>ad infinitum</u> until she correctly applies the proper legal standard and gathers evidence to support her conclusion.  <u>Sisco</u> 10 F.3d at 746.

Plaintiff applied for benefits in this case more than six years ago.  Moreover, as plaintiff argues, the first decision was remanded for further proceedings, the instructions of the Appeals Council were not followed, and there are still numerous errors in

the Commissioner's final decision.  These factors weigh in favor
of a remand for immediate award of benefits.

However, the evidence that plaintiff is disabled is not
uncontradicted.  As plaintiff acknowledges in her brief, a state
agency psychologist opined that plaintiff is not disabled because
his mental impairments would not remain "severe" within the
meaning of the Act for more than twelve months.  (Pl. Br.
31)(citing (R. 289-302)).  Moreover, Mr. Conrade, a social worker
with the Mental Health Center of East Central Kansas opined that
plaintiff "has the potential to work."  (R. 273).  Yet the ALJ
did not discuss the opinion of the state agency psychologist or
of Mr. Conrade, she did not set out a fair summary of the medical
evidence--both that which would support a finding of disability
and that which is contrary to such a finding, and she did not
seek a consultative psychological examination and did not seek
testimony from a medical expert.  Nonetheless, she attempted to
discount the opinions of plaintiff's treating psychiatrist merely
by appealing to a "clear conflict" with the psychiatrist's
treatment notes.

Considering the length of time plaintiff's application has
been pending, the prior Appeals Council remand, and the serious
lack of appropriate rationale and explanation in the second
decision, it is a close question whether this case should be
remanded for further proceedings or for an immediate award of

benefits.  However, because the evidence is equivocal and does not lead inevitably to a finding of disability, and because further development of the case (which was not completed by the second ALJ) may reveal evidence which will allow for a proper determination regarding disability, the court believes it is in the interest of justice to remand for further proceedings.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 23rd day of September 2008, at Wichita, Kansas.

> s/John Thomas Reid
> **JOHN THOMAS REID**
> **United States Magistrate Judge**

-34-